UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CONNLEY DAVIDSON,**

        **Plaintiff,**

-vs-                                        Case No.  6:06-cv-1674-Orl-19KRS

**ORANGE LAKE COUNTRY CLUB,
INC., ORANGE LAKE COUNTRY
REALTY CLUB, INC.,**

        **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion For Summary Judgment By Defendant Orange Lake Country Club, Inc. (Doc. No. 62, filed Nov. 28, 2007);

2. Motion For Summary Judgment By Defendant Orange Lake Country Realty Club, Inc. (Doc. No. 63, filed Nov. 28, 2007);

3. Notice Of Filing Of Evidence In Support Of Motions For Summary Judgment (DE 62 And 63) By Defendants Orange Lake Country Club Realty, Inc. And Orange Lake Country Club, Inc. (Doc. No. 64, filed Nov. 28, 2007); and

4. Response In Opposition To Defendants' Motions For Summary Judgment By Plaintiff Connley Davidson (Doc. No. 68, filed Jan. 5, 2008).

## Background

Plaintiff Connley Davidson brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19 (2006), against Defendants Orange Lake Country Club, Inc. ("OLCC") and

Orange Lake Country Realty Club, Inc. ("Realty").  (Doc. No. 14.)  Plaintiff claims that he was employed by both OLCC and Realty and that he "worked numerous weeks in excess of forty (40) hours a week, yet has not been compensated for all work in excess of forty (40) hours at a rate not less than one and one-half times [his] regular rate . . . ."  (*Id.* at p. 2, ¶ 4; *id.* at p. 3, ¶ 11.)  Plaintiff seeks damages for unpaid overtime, liquidated damages or prejudgment interest, and reasonable attorneys' fees and costs.  (*Id.* at p. 5, ¶¶ (d)-(e), (g).)

Defendants have filed separate Motions for Summary Judgment.  (Doc. Nos. 62-63.)  While Defendant Realty admits that Plaintiff was one of its employees, Defendant OLCC denies ever employing Plaintiff.   (Doc. No. 21 at ¶¶ 4, 7-8; Doc. No. 22 at ¶¶ 4, 7-8.)  Both Defendants deny being a joint enterprise.  (Doc. No. 21 at p. 4, ¶ 7; Doc. No. 22 at p. 4, ¶ 7; Doc. No. 62 at pp. 9-13; Doc. No. 63 at p. 8.)  Defendant OLCC claims that it is a retail or service establishment exempt from the FLSA's overtime pay requirements.  (Doc. No. 62 at pp. 14-21.)  Defendant Realty argues that Plaintiff was exempt from the FLSA's overtime provisions pursuant to the outside sales exemption. (Doc. No. 63 at pp. 8-14.)

In his Response in opposition to Defendants' Motions, Plaintiff argues first that the Court should not consider certain Declarations jointly offered by both Defendants to support Defendant OLCC's Motion, because OLCC did not disclose these witnesses as required by Federal Rule of Procedure 26(A)(1)(a).  (Doc. No. 68 at pp. 1-3.)  In addition, while Defendant Realty disclosed these witnesses, the "subject matter of the information provided in the Declarations" was insufficient, and therefore the Court should not consider their Declarations in support of Defendant Realty's Motion.  (*Id.* at pp. 3-6.)  Neither Defendant previously disclosed Thomas Nelson as a witness, and Plaintiff argues that the Declaration of this witness should be ignored.  (*Id.* at p. 4.)

Plaintiff also argues that OLCC did not specifically plead the retail or service establishment affirmative defense and is therefore barred from raising this defense in its Motion for Summary Judgment. (*Id.* at pp. 4-5.) In any event, Plaintiff asserts that there are genuine issues of material fact regarding the retail or service establishment exemption and the outside salesperson exemption. (*Id.* at pp. 5-8.)

**Standard of Review**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the

credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

**Analysis**

I. **Procedural Matters**

A. **Undisclosed Witnesses**

Plaintiff asserts that this Court should not consider some of the witness statements offered by Defendants because these witnesses were not properly disclosed to Plaintiff under Federal Rule of Civil Procedure 26(A)(1)(a). (Doc. No. 68.) This rule provides in pertinent part that a party must disclose "the name . . . of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). A party must supplement this disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." *Id.* at R. 26(e)(1)(A).

If a party fails to disclose or supplement this information, then "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

failure was substantially justified or is harmless." *Id.* at R. 37(c)(1). This Court has previously explained the proper analysis under Rule 37:

> Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there is [a] genuine dispute concerning compliance. . . . Failure to timely make the required expert witness disclosures is harmless when the party entitled to the disclosure suffers no prejudice.

*Home Design Servs., Inc. v. Hibiscus Homes of Fla., Inc.*, No. 6:03-cv-1860-Orl-19KRS, 2005 WL 2465020, at *2 (M.D. Fla. Oct. 6, 2005) (internal citations omitted).[1]

In the present case, the Court need not reach the question of whether Defendants have failed to properly disclose these witnesses for purposes of deciding the Summary Judgment Motions. Even taking into account the Declarations offered by Defendants at Docket Number 64, Defendants have failed to demonstrate that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

### B.  OLCC's Assertion of the Retail and Service Establishment Exemption

Plaintiff argues that Defendant OLCC waived the retail or service establishment affirmative defense because it did not specifically plead this defense in its Answer. (Doc. No. 68 at pp. 4-5.) Under the Federal Rules of Civil Procedure, a party must "affirmatively state any avoidance or affirmative defense . . . ." Fed. R. Civ. P. 8(c)(1). Failure to "specifically plead" an affirmative

---

[1] When reviewing a district court's decision to exclude a non-disclosed witness' testimony, the Eleventh Circuit Court of Appeals considers: "(1) the importance of the testimony, (2) the reasons for the appellant's failure to disclose the witness earlier, and (3) the prejudice to the opposing party if the witness had been allowed to testify." *Cooley v. Great Southern Wood Preserving*, 138 F. App'x 149, 161 (11th Cir. 2005) (quoting *Bearint ex rel. Bearint v. Dorell Juvenile Group, Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004)).

defense "results in the waiver of this defense." *Easterwood v. CSX Transp., Inc.*, 933 F.2d 1548, 1551 (11th Cir. 1991). However, the Eleventh Circuit stated, "[W]e have been reluctant to enforce strictly the harsh waiver requirement where the plaintiff is unable to demonstrate any prejudice due to the lack of notice." *Id.*

In this case, Defendant OLCC asserted as an affirmative defense that Plaintiff has "no claim for overtime compensation because . . . he was at all pertinent times exempt under the FLSA." (Doc. No. 21 at p. 10.) While this assertion does not specifically plead the retail or service establishment exemption, it does give Plaintiff notice that an exemption defense would be raised. Plaintiff csould have pursued clarification of this affirmative defense through discovery.

Additionally, the retail or service establishment exemption was specifically pled by Defendant Realty in its Answer. (Doc. No. 22 at p. 10.) Plaintiff has alleged that the two Defendants are functionally the same entity; thus, it is incongruous for Plaintiff to allege inadequate notice when he was informed that at least one Defendant would be raising this defense. Further, Plaintiff has not claimed he has suffered any prejudice as a result of this belated defense. Therefore, the Court does not find adequate cause to exclude Defendant OLCC's affirmative defense of the retail or service establishment exemption at this time.

**II.    Merits**

    **A.    Employment**

In this case, it is undisputed that Defendant Realty employed Plaintiff. (Doc. No. 22 at pp. 2-3, ¶ 4.) Defendant OLCC, however, denies being Plaintiff's employer. (Doc. No. 21 at pp. 2-3, ¶ 4.) Therefore, the Court must consider whether Plaintiff was jointly employed by OLCC.

The FLSA imposes liability on certain entities that "employ" workers in violation of its provisions. 29 U.S.C. § 216(b). The Act defines "employ" as "to suffer or permit to work." *Id.* § 203(g). Federal regulation provides that a single individual may "stand in the relation of an employee to two or more employers at the same time . . . ." 29 C.F.R. § 791.2(a).[2] When an employee's work simultaneously benefits two different employers, the employee may be deemed jointly employed by both employers. *Id.* § 791.2(b). Federal regulations give several examples of situations where "a joint employment relationship generally will be considered to exist":

(1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

---

[2] The Court construes Plaintiff's "joint enterprise" claims as arguments that Plaintiff was jointly employed by both Defendants. The FLSA's enterprise analysis goes only to coverage under the Act; it does not impose new liabilities on separate corporations within an enterprise. *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986). As the Eleventh Circuit has held: "[T]he enterprise analysis is different from the analysis of who is liable under the FLSA. The finding of an enterprise is relevant only to the issue of coverage. Liability is based on the existence of an employer-employee relationship." *Id.*; *see also Thompson v. Robinson, Inc.*, No. 6:06-cv-771-Orl-19JGG, 2007 WL 2714091, at *4 (M.D. Fla. Sept. 17, 2007). Since there is no dispute as to coverage under the FLSA, the joint enterprise claims appear to go to the question of liability and therefore are construed as allegations of joint employment.

*Id.* (footnotes omitted).[3]  The third regulatory scenario is most relevant in the present case.  As the Ninth Circuit Court of Appeals has explained, "Subsection 791.2(b)(3) tells us that joint employment will generally be considered to exist when 1) the employers are not 'completely disassociated' with respect to the employment of the individuals and 2) where one employer is controlled by another or the employers are under common control."  *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 918 (9th Cir. 2003).

The current record contains evidence that raises a genuine issue of material fact as to whether Plaintiff was employed by Defendant OLCC.  In a sworn statement submitted with his Response, Plaintiff asserted:

> The Orange Lake Country Club property is managed as one unit.  There is no differentiation between employees or managers of Orange Lake Country, Club, Inc. and Orange Lake Country Club Realty, Inc.  On numerous occasions I was provided supervision, instruction and direction from members of the management of Orange Lake Country Club, Inc.  In fact, Orange Lake Country Club, Inc.'s management required me to utilize the sales techniques demonstrated by its management personnel.  At all times the management of Orange Lake Country Club, Inc., possessed the power and authority to terminate my employment, change the rate of my pay or percentage of my commissions.

(Doc. No. 68-5 at pp. 2-3, ¶ 6.)  Plaintiff has previously submitted evidence that he is a timeshare salesman and that OLCC is in the business of selling timeshare units.  (*See* Doc. No. 15-2 at p. 1.)  At least two of Realty's executive officers hold identical executive positions in OLCC: Don L. Harrill and Thomas R. Nelson.  (Doc. No. 43-3 at p. 18; Doc. No. 64 at pp. 10, 14.)  Accordingly, the Court declines to find as a matter of law that Plaintiff was not jointly employed by OLCC.

---

[3]  The Eleventh Circuit has articulated a test that is applicable in "vertical" joint employment cases; for example, where a farm utilizes a labor contracting business to provide workers for the harvesting season.  *E.g.*, *Antenor*, 88 F.3d 925.  However, this case involves allegations of a "horizontal" joint employment situation, and therefore the regulatory factors guide this determination.  *Chao*, 346 F.3d at 917.

### B. Applicability of Exemptions

#### 1. Retail or Service Establishment

Defendants claim that they are not subject to the FLSA's overtime provisions because they are retail or service establishments exempted in Section 207(i). (Doc. No. 62 at pp. 14-21; Doc. No. 63 at p. 8.) No statutory definition of "retail or service establishment" currently exists. When Congress passed Section 207(i) in 1961, it specifically stated that the phrase "retail or service establishment" was to be given the same meaning as the phrase in Section 213(a)(2). The definition of this phrase in Section 213(a)(2), however, was repealed in 1990. Nevertheless, courts have found that this definition is applicable still to Section 207(i) since no Congressional intent has been shown to modify the definition. *See, e.g.*, 29 C.F.R. §§ 779.301, 779.312; *Reich v. Delcorp, Inc.*, 3 F.3d 1181, 1183 (8th Cir. 1993); *Reich v. Cruises Only, Inc.*, No. 6:95-cv-660-Orl-19, 1997 WL 1507504, at *2 (M.D. Fla. June 5, 1997). Section 213(a)(2) defined a retail or service establishment as: (1) an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and (2) is recognized as retail sales or services in the particular industry. 29 U.S.C. § 213(a)(2) (repealed 1990).

Federal regulations clarify that this exemption applies only to a "traditional local retail or service establishment." 29 C.F.R. § 779.315. Such establishments must be part of industries that have a "retail concept." *Id.* § 779.316. One provision explains:

> Typically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process.

*Id.* § 779.318. Another provision includes a partial list of "establishments to which the retail concept does not apply," and this list includes "real estate companies" and "apartment houses." *Id.* § 779.317.[4]

As of the date of this Order, the only federal decision located which considers whether a timeshare sales company is a retail or service establishment is *Williams v. Trendwest Resorts, Inc.*, No. 2:05-cv-605-RCJ-LRL, 2007 WL 2429149 (D. Nev. Aug. 20, 2007). In *Williams*, the Court found that a timeshare sales company was not a traditional retail business, was not in the business of selling goods or services, and was not part of an industry possessing a retail concept. *Id.* at **7-8. The Nevada Court distinguished this Court's holding in *Reich v. Cruises Only, Inc.*[5] by stating that timeshare sales are distinct from vacation package sales. *Id.* at *8. The Court found:

> Buyers purchase the right to yearly vacation credits, but also receive, as discussed previously, ownership in the larger corporate interests of [the resort property owner]. These rights are of perpetual duration and include broader real estate interests. . . . Those services which [timeshare unit] owners receive are part of the purchasers' larger ownership interests.

*Id.* The Court then concluded that a timeshare sales company is not in the business of selling goods or services under the FLSA. *Id.* This Court agrees that timeshare sales companies are akin to the "real estate companies" listed in Section 779.317 of the Code of Federal Regulations as lacking a retail concept and finds that the timeshare sales companies in this case are not retail or service establishments under the FLSA.

---

[4] Courts are to give administrative regulations controlling weight unless they are arbitrary, capricious, or manifestly contrary to legislation. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984).

[5] *Cruises Only, Inc.*, 1997 WL 1507504, at *6 (holding that a travel agency selling vacation packages is a retail or service establishment under the FLSA).

Defendants' descriptions of their companies do not persuade the Court otherwise. The record indicates that Defendants sold ownership interests in real property rather than vacation packages. For example, OLCC employee Lori Howell explained that the common areas of the resort are "owned in common on a fractional basis by owners within the respective condominium" and that between the resort communities there are "easements in favor of each of the condominium associations and each of the tens of thousands [of] timeshare interest owners . . . over property owned by Disney." (Doc. No. 64 at p. 24, ¶ 5.) Ms. Howell also stated: "Each timeshare interest owner pays an annual assessment to their respective condominium association for the management services of WRMC, which assessment includes amounts for the maintenance and operation of recreational amenities and common areas located outside of the condominium but within the resort." (*Id.* at p. 25, ¶ 6.) These descriptions suggest that the Defendants' customers are buying ownership interests in realty rather than vacation packages; therefore, neither of the Defendants is engaged in the sale of goods or services under the FLSA. Thus, Defendants have not demonstrated that they are retail or service establishments exempt from the FLSA's overtime pay provisions as a matter of law.

### 2.    Outside Salesman

Defendants next argue that Plaintiff is not covered by the overtime provisions of the FLSA because he qualifies as an outside salesman under Section 213(a)(1). (Doc. No. 62 at p. 1; Doc. No. 63 at pp. 8-14.) A federal regulation explains that a person employed in the capacity of outside salesman means any employee:

(1)   Whose primary duty is:
    (i)    making sales within the meaning of section 3(k) of the Act, or
    (ii)   obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

>    (2)    Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a). Work performed "incidental to and in conjunction with the employee's own outside sales or solicitations . . . shall be regarded as exempt outside work." *Id.* § 541.500(b). Regulation defines "away from the employer's place or places of business" as follows:

> The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property. However, an outside sales employee does not lose the exemption by displaying samples in hotel sample rooms during trips from city to city; these sample rooms should not be considered as the employer's places of business. Similarly, an outside sales employee does not lose the exemption by displaying the employer's products at a trade show. If selling actually occurs, rather than just sales promotion, trade shows of short duration (i.e., one or two weeks) should not be considered as the employer's place of business.

*Id.* § 541.502.

Administrator Paul DeCamp of the United States Department of Labor has issued an Opinion Letter that states that timeshare salespeople do *not* qualify for the outside sales exemption.[6] P. Decamp, Department of Labor, Wage and Hour Division, Opinion Letter, FLSA2007-4, 2007 WL 506577 (Jan. 25, 2007). The Administrator explained:

> A resort such as the one you describe is generally maintained on a permanent basis as a location of the employer and is staffed with the necessary personnel for maintaining the resort facilities. We understand that although the employer sells timeshare interests in some of the properties on the resort, the employer also retains a continuing business interest in the remaining resort facilities, and in maintaining

---

[6] "[A]n agency's interpretation of its own regulations is 'controlling' unless 'plainly erroneous or inconsistent with' the regulations being interpreted." *Long Island Care at Home, Ltd. v. Coke*, 127 S.Ct. 2339, 2349 (2007) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

>both the resort and the timeshare units that have been sold. Under these facts, the entire resort must be considered the employer's place of business. This position is consistent with the Department's previous conclusions that employees selling developed campsites from within a "condominium" campground, and apartment rental agents who never leave the apartment community, are not exempt outside sales employees because they never leave the employer's place of business. . . . The Department has reached a different conclusion in cases involving real estate sales employees selling lots of land from a model home on a subdivision, who customarily and regularly leave the model home, because the employer does not maintain a continuing interest in the subdivision lots once they are sold or in the other facilities in the subdivision, and thus these areas are not part of the employer's place of business.

*Id.* (internal citations omitted). Therefore, the Administrator concluded that timeshare salespeople are not outside salespeople under the FLSA. *Id.*

In the current case, Defendant Realty "acknowledges that it is the employer's burden to show that Plaintiff comes within the outside sales exemption, and acknowledges further that the exemptions under the FLSA are to be narrowly construed against the employer asserting them." (Doc. No. 63 at p. 9.) Defendants have come forward with no evidence of the business structure of Orange Lake Resort and Country Club, the umbrella organization which runs the resort and under which both Defendants are apparently organized.[7] However, Plaintiff has stated in his sworn Declaration:

---

[7] The Declarations offered by Defendant are inconclusive on this matter. For instance, Christina Briggs stated "I am employed as a corporate paralegal for Orange Lake Resort & Country Club. My duties and responsibilities include serving as custodian of records for the corporate minutes of Orange Lake Country Club Realty, Inc. ("Realty"), and for the corporate filings on behalf of Realty with the State of Florida Division of Corporations. I have had these responsibilities since 1996." (Doc. No. 64 at p. 4, ¶ 2.) Lori Howell states that she is aware of the ownership of the various premises located at Orange Lake Resort & Country Club through her position at OLCC. (Doc. No. 64 at p. 23, ¶¶ 2-3.) These statements raise a genuine issue of material fact as to the intertwined nature of these businesses and what interest each has in the resort property as a whole.

>During my employment with Defendants, I was at all times required to remain within the confines of the communities that were Defendats' place of business. The entire community within which I sold timeshare was the Defendants' place of business. I was required to remain within the confines of this community during my assigned work day and was instructed that should I leave the property for any reason that I would be terminated.
>
>During my employment, I was not free to choose the locations at which I could perform my sales activities and never sold any time-share outside of the communities at which I was assigned by the Defendants. I was never free to make sales at any other location than the Defendants' place of business.
>
>Defendants' Management personnel could be located anywhere in the community at any time, including the pathways, common areas, and models condominiums. I was subject to the supervision of Defendants' managers the entire time I was performing sales in the community that was the Defendants' place of business.

(Doc. No. 68-5 at pp. 1-2, ¶¶ 2-4.) Thus, there are genuine issues of material fact as to what entities within the Orange Lake Resort and Country Club overlap and which may fairly be said to have continuing interests in the resort as a whole. In other words, there is a factual issue as to what constitutes the Defendants' "place of business." Therefore, the Court cannot conclude as a matter of law that Plaintiff is an outside salesperson exempted from the FLSA's overtime pay requirements.

## Conclusion

Based on the foregoing, the Court **DENIES** Defendant OLCC's Motion for Summary Judgment (Doc. No. 62) and **DENIES** Defendant Realty's Motion for Summary Judgment (Doc. No. 63).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January 29, 2008.

*[signature: Patricia C. Fawsett]*

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:
Counsel of Record