**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CONNLEY DAVIDSON,**

      **Plaintiff,**

-vs-                                                  **Case No.  6:06-cv-1674-Orl-19KRS**

**ORANGE LAKE COUNTRY CLUB, INC.,**
**ORANGE LAKE COUNTRY REALTY CLUB,**
**INC.**

      **Defendants.**

_____

## ORDER

This case comes before the Court on the following:

1. Rule 59(e) Motion For Reconsideration Of The Court's Order Denying Defendants' Motions For Summary Judgment (DE 77), Or, In The Alternative, For Clarification Of The Court's Order By Defendants Orange Lake Country Club, Inc. and Orange Lake Country Club Realty, Inc. (Doc. No. 88, filed Feb. 12, 2008);

2. Motion To Continue Trial Pending Decision On Defendants' Rule 59(e) Motion For Reconsideration (DE 88) By Defendants (Doc. No. 89, filed Feb. 20, 2008); and

3. Response To Defendants' Rule 59(e) Motion For Reconsideration Of The Court's Order Denying Defendants' Motions For Summary Judgment (DE 77), Or, In The Alternative, For Clarification Of The Court's Order By Plaintiff Connley Davidson (Doc. No. 90, filed Feb. 25, 2008).

**Background**

Plaintiff Connley Davidson brought this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-21 (2006), against Defendants Orange Lake Country Club, Inc. ("OLCC") and Orange Lake Country Realty Club, Inc. ("Realty"). (Doc. No. 14, filed Dec. 13, 2006.) Plaintiff claims that he was employed by both OLCC and Realty and that he "worked numerous weeks in excess of forty (40) hours a week, yet has not been compensated for all work in excess of forty (40) hours at a rate not less than one and one-half times [his] regular rate . . . ." (*Id.* at p. 2, ¶ 4; *id.* at p. 3, ¶ 11.)

Defendants filed separate Motions for summary judgment, and Plaintiff filed a Response in opposition. (Doc. No. 62, filed Nov. 28, 2007; Doc. No. 63, filed Nov. 28, 2007; Doc. No. 68, filed Jan. 5, 2008.) The Court denied Defendants' Motions, finding that Defendants had failed to demonstrate there were no genuine issues of material fact and that Defendants were entitled to judgment as a matter of law. (Doc. No. 77, filed Jan. 29, 2008.) Defendants now jointly move the Court to reconsider its decision under Federal Rule of Civil Procedure 59(e) or, in the alternative, to clarify its Order denying summary judgment. (Doc. No. 88, filed Feb. 12, 2008.) Plaintiff has filed a Response in opposition to Defendants' Motion. (Doc. No. 90, filed Feb. 25, 2008.)

**Standard of Review**

The Eleventh Circuit Court of Appeals has described a motion for reconsideration as falling within the ambit of either Federal Rule of Civil Procedure Rule 59(e) (motion to alter or amend a judgment) or Federal Rule of Civil Procedure Rule 60(b) (motion for relief from judgment). *Region 8 Forest Serv. Timber Purchases Council v. Alcock*, 993 F.2d 800, 806 n. 5 (11th Cir.1993). Under either rule, the decision to grant a motion for reconsideration is committed to the sound discretion

of the trial court and will not be overturned on appeal absent an abuse of discretion. *Id.* at 806. The purpose of a motion for reconsideration is to correct manifest errors of law, to present newly discovered evidence, or to prevent manifest injustice. *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). In order to reconsider a judgment, there must be a reason why a court should reconsider its prior decision, and the moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994). A motion fo reconsideration should not be used to reiterate arguments previously made. *Burger King Corp.*, 181 F. Supp. 2d at 1369. Reconsideration of a previous order is an extraordinary remedy to be employed sparingly. *Id.*

**Analysis**

**I.     Motion for Reconsideration**

Defendants argue that the Court should reconsider its Order at Docket Number 77 for four reasons. (Doc. No. 88.) First, Defendants claim the Court applied the incorrect legal standard in determining whether OLCC employed Plaintiff. (*Id.* at pp. 4-13.) Second, Defendants assert that the Court improperly placed the burden of proof on Defendants in its joint employment analysis. (*Id.* at pp. 13-18.) Third, Defendants argue that the Court impermissibly decided the merits of the FLSA retail or service establishment exemption. (*Id.* at pp. 19-22.) Fourthly and finally, Defendants state that the Court should have granted summary judgment in its favor on the outside salesman exemption. (*Id.* at pp. 22-24.) The Court considers each argument in turn.

**A.     Standard for Joint Employment**

In their Motion for reconsideration, Defendants state:

> In its Order denying summary judgment for OLCC, the Court rejected the substantive legal standard articulated by the Eleventh Circuit, and agreed by the parties to be the appropriate test for measuring joint employer status in this case, and instead substituted a standard derived from a 1958 interpretive bulletin of the U.S. Department of Labor. Because the Court substituted the DOL interpretive bulletin – guidance not entitled to any deference and without even the power to persuade in this Circuit – for the legal standard articulated by the Eleventh Circuit which is binding precedent on the Court, reconsideration of the Court's decision on OLCC's joint employer status is merited.

(*Id.* at p. 4.) Defendants claim that Plaintiff alleged "<u>specifically</u> that OLCC was a joint employer according to the legal test set forth by the Eleventh Circuit in *Aimable v. Long & Scott Farms*, 20 F.3d 434, 439-45 (11th Cir. 1994) and *Antenor v. D & S Farms*, 88 F.3d 925, 932-33 (11th Cir. 1996)." (*Id.*) The Court rejects Defendants' arguments for the reasons stated below.

Defendants appear to suggest that the Court *must* apply the case law cited by both parties.[1] However, this is not a matter of contract law in which the Court's role is to interpret the intent of the parties. The Court is bound to apply the law–not the standard agreed upon by the parties. In any event, Plaintiff denies "relying on" the specific standard set forth in *Aimable* and *Antenor* and correctly states, "The fact that Plaintiff previously cited to these decisions does mean he is solely relying on those decisions or that the Court is bound by Plaintiff's reliance on those decisions, even if he had 'specifically' asserted that his claims were alleged 'according to the legal test' set forth in *Aimable* and *Antenor*." (Doc. No. 90 at pp. 2-3.) The Court therefore turns to the question of whether the incorrect legal standard was applied.

---

[1] "In denying OLCC's motion for summary judgment, the Court decided that a <u>different</u> substantive legal standard should be applied to the question of OLCC's joint employer status than the test articulated by the Eleventh Circuit and which Plaintiff also had specifically identified as the test according to which he was alleging joint employer status in this case – and thus a different legal test from the one upon which OLCC sought summary judgment in this case." (Doc. No. 88 at p. 5.)

In the two cases relied upon primarily by Defendants, *Aimable* and *Antenor*, the Eleventh Circuit considered whether seasonal and migrant agricultural workers were jointly employed by both farm labor contractors and the farmers who utilized the services of the labor contractors to hire these workers. *Antenor*, 88 F.3d 925; *Aimable*, 20 F.3d 434. Both cases were decided under the Migrant and Seasonal Agricultural Workers Protection Act ("MSAWPA"), 29 U.S.C. §§ 1801-72 (2006)[2] in conjunction with the FLSA. *Antenor*, 88 F.3d at 928-29; *Aimable*, 20 F.3d at 436. In both cases, the Eleventh Circuit applied the regulatory definition of joint employment under the MSAWPA, 29 C.F.R. § 500.20(h)(4) (2007). *Antenor*, 88 F.3d at 929-30 & n. 6; *Aimable*, 20 F.3d at 438-39. The Eleventh Circuit also considered additional factors utilized in various court decisions for "vertical" joint employment[3] cases. *Antenor*, 88 F.3d at 930-32 & n. 9; *Aimable*, 20 F.3d at 443-45. While these cases are binding precedent within the Eleventh Circuit, they are controlling over only those cases brought under the MSAWPA involving "vertical" joint employment. *See, e.g.*, *Charles v. Burton*, 169 F.3d 1322, 1336 (11th Cir. 1999) (Roney, J., concurring in part and dissenting in part) (citing *Aimable* and *Antenor* as the "two controlling cases in this circuit involving seasonal and migrant farm workers").

Furthermore, while the Eleventh Circuit has recognized that the MSAWPA incorporates the FLSA's definition of "joint employment," the Eleventh Circuit has not held that the reverse is true

---

[2]   See *Antenor*, 88 F.3d at 930-31, for a discussion of the historical purposes behind the MSAWPA to protect a particular type of workers and its unique approach to the issue of joint employment.

[3]   "Vertical" joint employment cases involve situations in which an employer hires laborers through a third party labor contractor. "Horizontal" joint employment cases involve situations in which two or more related or overlapping entities employ a worker. *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003). *Compare Antenor*, 88 F.3d 925, *with Patel*, 803 F.2d 632.

and that the FLSA incorporates the MSAWPA's definition. *See Antenor*, 88 F.3d at 930; *Aimable*, 20 F.3d at 438. Therefore, the Court did not err in finding that the factors articulated in the *Antenor* and *Aimable* cases were not binding in this case.[4]

Nor did the Court err in using the regulatory standard set forth in 29 C.F.R. § 791.2 (2007). Pursuant to Eleventh Circuit precedent, the Court looked to federal regulations interpreting the FLSA to guide its analysis of the "joint employer" issue. (Doc. No. 77 at pp. 7-8.)[5] Despite Defendants' arguments to the contrary and as recognized by the Eleventh Circuit, the definition of "joint employment" under the FLSA is found at 29 C.F.R. § 791.2. *E.g.*, *Antenor*, 88 F.3d at 929-30 & n. 6; *Aimable*, 20 F.3d at 438 n. 6. This regulation provides examples of when a joint employment relationship generally will be considered to exist, including:

> Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

---

[4] This is not to say that the factors present in these cases are not relevant to the Court's joint employment analysis. However, argument as to the extent *Antenor* and *Aimable* should be considered persuasive authority is not currently before the Court. Even if it were, the Court is not convinced that consideration of these factors would change its decision denying summary judgment when there remain genuine issues of material fact on the joint employment issue in the record. (*See* Doc. No. 77 at p. 8.)

[5] "This court . . . accords significant weight to the statutory interpretation of the executive agency charged with implementing the statute being construed, particularly where, as here, that interpretation is incorporated in a formally published regulation." *Gonzalez-Sanchez v. Int'l Paper Co.*, 346 F.3d 1017, 1020 n. 4 (11th Cir. 2003); *accord Charles*, 169 F.3d at 1328 n. 10; *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1507 (11th Cir. 1993).

29 C.F.R. § 791.2(b)(3). In such a case "the employee performs work which simultaneously benefits two or more employers." *Id.* § 791.2(b). This definition clearly applies to the current FLSA case, and the Court did not err in analyzing the joint employment issue under this standard.[6]

### B. Burden of Proof

Defendant next argues that the Court improperly placed the burden of proof on Defendants and erred in denying Defendants' Motion for summary judgment on the issue of Defendant OLCC's joint employer status. (Doc. No. 88 at pp. 13-18.) Specifically, Defendants claim that the Court erred in finding genuine issues of material fact: (1) based on Plaintiff's affidavit attached to his summary judgment opposition and (2) facts "inferred" from the record that were "not cited to by the Plaintiff." (*Id.* at p. 15.) Thus, Defendants state, "That Plaintiff's conclusory paragraph of his declaration and the two other paltry 'facts' cited by the Court could be deemed adequate by the Court to preclude summary judgment necessarily suggests that the Court placed the burden on OLCC rather than on the Plaintiff on the joint employer issue." (*Id.*)

As the Court has previously explained, the *party moving for summary judgment* has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining

---

[6] Also contrary to Defendants' claims, this regulatory definition is not inconsistent with the Eleventh Circuit's holding in *Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986), and both properly may be applied to the current case. *Patel* involved a "horizontal" joint employment situation in which two companies were somewhat intertwined, and the plaintiff alleged that he was employed by both. *Id.* at 633-35. In that case, the Eleventh Circuit determined for each company whether the plaintiff "contemplated compensation for his acts" for that company, and whether, "as a matter of economic reality," the plaintiff was dependent on that company. *Id.* at 635. These considerations are entirely consistent with the regulatory definition of joint employment.

whether the moving party has satisfied its burden, the Court *considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion* and resolves all reasonable doubts against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, the Court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Defendants argue that Plaintiff has failed to make a showing sufficient to establish the joint employment issue, on which Plaintiff bears the burden of proof at trial. (Doc. No. 88 at pp. 13-18.) In other words, Defendants claim, Plaintiff has not come forward with specific facts showing a genuine issue for trial as required under Federal Rule of Procedure 56(e)(2). (*See id.*) However, this Rule only applies when "a motion for summary judgment is properly made and supported." Fed. R. Civ. P. 56(e)(2). As the Supreme Court has explained, a motion for summary judgment is properly made and supported when the moving party has first demonstrated that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. This Court previously found that there were facts in the record suggesting Defendants OLCC and OLCR were not completely disassociated with respect to the employment of Plaintiff. (Doc. No. 77 at p. 8.) Defendants' argument that the Court erred in this conclusion because these facts were not "cited to by the Plaintiff" or because they are based on inferences from the record is incorrect, for the Supreme Court has instructed that a court

must consider all inferences drawn from the underlying facts in the light most favorable to the party opposing a motion for summary judgment. *Anderson*, 477 U.S. at 255.

Furthermore, even if Defendants had met their burden of demonstrating there were no genuine issues of material fact, Plaintiff came forward with specific facts showing a genuine issue for trial. Plaintiff asserted in a sworn statement submitted with his Response:

> The Orange Lake Country Club property is managed as one unit. There is no differentiation between employees or managers of Orange Lake Country, Club, Inc. and Orange Lake Country Club Realty, Inc. On numerous occasions I was provided supervision, instruction and direction from members of the management of Orange Lake Country Club, Inc. In fact, Orange Lake Country Club, Inc.'s management required me to utilize the sales techniques demonstrated by its management personnel. At all times the management of Orange Lake Country Club, Inc., possessed the power and authority to terminate my employment, change the rate of my pay or percentage of my commissions.

(Doc. No. 68-5 at pp. 2-3, ¶ 6.) This statement, though brief, provides specific facts and is not merely conclusory. A jury could find such testimony credible and conclude Plaintiff was jointly employed by Defendant OLCC. The Court therefore did not err in denying summary judgment.

### C.   Retail or Service Establishment Exemption

First, Defendants assert that Defendant OLCC alone moved for summary judgment on the retail or service establishment exemption and not Defendant Realty. (Doc. No. 88 at p. 19.) In Defendant Realty's Motion for summary judgment, however, Defendant Realty stated: "Rather than burdening the record by reasserting such facts and argument here, Realty incorporates by reference the facts, evidence, law, and argument set forth in OLCC's Motion for Summary Judgment." (Doc. No. 63 at p. 8.) The Court construed this statement broadly in Realty's favor and determined that Realty also intended to argue that it was exempt from the FLSA's overtime provisions as a retail or service establishment. (*See* Doc. No. 77 at p. 9.) The Court then considered whether either

Defendant OLCC or Defendant Realty qualified under this exemption. (*Id.* at pp. 9-11.) The Court concluded, "Defendants have not demonstrated that they are retail or service establishments exempt from the FLSA's overtime pay provisions as a matter of law." (*Id.* at p. 11.) Therefore, at worst, the Court determined that Defendant Realty was not entitled to summary judgment on a point that Defendant Realty did not actually intend to raise. This does not qualify as a miscarriage of justice entitling Defendant Realty to reconsideration.

Secondly, Defendant OLCC claims that the Court should not have reached the exemption issue at all, because "OLCC moved for summary judgment on this ground only as an alternative if the Court should first hold that OLCC jointly employed the Plaintiff." (Doc. No. 88 at p. 19.) Defendant continues:

> Because the Court did not hold that OLCC jointly employed the Plaintiff and in fact could not so hold because no cross-motion for summary judgment was filed by Plaintiff on that issue, the Court's decision to decide "as an matter of law" the application of the 207(i) exemption to both OLCC and Realty was outside of the adversarial issues presented to the Court by the parties on summary judgment.

(*Id.*) Defendant OLCC appears to claim here that the Court should not have considered one of such Defendant's own arguments. Defendant OLCC further claims, "Thus on reconsideration, unless the Court should assume for purposes of granting summary judgment for OLCC on the 207(i) exemption that OLCC is a joint employer of Plaintiff (which would constitute a decision on the merits), the Court may not consider or decide the application of the 207(i) exemption to OLCC in this case." (*Id.* at p. 20, n. 14.)

Defendant is simply incorrect in this argument. The Court may and did consider whether Defendant OLCC was entitled to summary judgment as a retail or service establishment exempt from the FLSA's overtime provisions. If such was the case, the Court could have granted judgment

for OLCC by assuming without deciding OLCC jointly employed Plaintiff. The Court did not err in considering this possibility.

### D.     Outside Salesperson Exemption

Finally, Defendant Realty argues that the Court erred in denying Defendant Realty's Motion for summary judgment, because Plaintiff is an outside salesperson exempt from the FLSA's overtime pay requirements. (Doc. No. 88 at pp. 22-24.) In making this argument, however, Defendant Realty merely reasserts the same argument it made in its Motion for Summary Judgment and argues the Court erred in finding genuine issues of material fact. (*Id.*) As the Court explained above, a motion for reconsideration should not be used to reiterate arguments previously made. *Burger King Corp.*, 181 F. Supp. 2d at 1369. Defendant Realty has not set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision. *See Sussman*, 153 F.R.D. at 694. Therefore, the Motion for Reconsideration must be denied.

### II.    Motion for Clarification

In the alternative, Defendants move for clarification of the Court's Order denying their Motions for Summary Judgment. (Doc. No. 88 at p. 25.) First, Defendants seek clarification as to whether the Court decided the merits of the application of the retail or service establishment exemption under the FLSA. (*Id.*) The Court did not make such a finding on the merits but instead found that, in their Motions for Summary Judgment, Defendants failed to show that they were entitled to judgment as a matter of law on this issue. (Doc. No. 77 at p. 11.)[7]

---

[7]     In its Order denying summary judgment, the Court did indicate that timeshare companies generally did not appear to have a retail concept qualifying them for this exemption. (Doc. No. 77 at p. 10.) This of course does not foreclose Defendant OLCC from presenting evidence at trial that its company has a retail concept and
(continued...)

Second, Defendants request clarification as to the extent to which the Department of Labor Administrator's January 25, 2007 Opinion Letter controls the interpretation of the outside salesperson exemption. (Doc. No. 88 at p. 25.)[8] As the Court previously explained, "[A]n agency's interpretation of its own regulations is 'controlling' unless 'plainly erroneous or inconsistent with' the regulations being interpreted." (Doc. No. 77 at p. 12, n. 6) (quoting *Long Island Care at Home, Ltd. v. Coke*, 127 S.Ct. 2339, 2349 (2007)). The January 25, 2007 Opinion Letter is nether plainly erroneous nor inconsistent with the regulations being interpreted. (*See id.* at pp. 12-13.) Therefore, it is controlling in this case. As Defendants bear the burden of proving the exemption applies, Defendants must demonstrate distinguishing facts at trial. (*See id.* at p. 13.)

---

[7](...continued)
    therefore qualifies as a retail or service establishment.

[8]     Defendants also question the relevance of the relationship between Realty, OLCC, and "a putative third 'umbrella organization'" and "the overall 'business structure' of the resort" to the outside salesperson exemption inquiry. (Doc. No. 88 at p. 25.) As previously explained, these facts are relevant to the exemption because they demonstrate the degree to which Defendants have a continuing interest in the resort property itself. (Doc. No. 77 at pp. 13-14 & n. 7.) This is of course relevant to the determination of what constitutes Defendants' place(s) of business. (*Id.* at p. 13.) The degree to which there may be confusion on the matter reflects the lack of clarity in the record as to the issue on which Defendants bear the burden of proof at trial. (*See id.*)

**Conclusion**

Based on the foregoing, the Court **DENIES** Defendants' Motion for Reconsideration and **GRANTS** Defendants' Motion for Clarification.  (Doc. No. 88.)  The Court **DENIES AS MOOT** Defendants' Motion to Continue Trial.  (Doc. No. 89.)

**DONE** and **ORDERED** in Chambers in Orlando, Florida on February 29, 2008.

*[Signature]*

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:
Counsel of Record